In re the MARRIAGE OF Lawrence Thomas NESSET and Joan Marie Nesset.

Upon the Petition of Lawrence Thomas Nesset, Appellant,

and Concerning Joan Marie Nesset, Appellee.

No. 83–851.

Supreme Court of Iowa.

Feb. 15, 1984.

James E. Shipman and Mark E. Liabo of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

David S. Good of Nazette, Hendrickson, Marner & Good, Cedar Rapids, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal primarily involves issues relating to a cost of living adjustment (COLA) clause in a marriage dissolution decree.

The district court dissolved the parties' marriage on April 3, 1981, and incorporated their stipulation of settlement into its decree. Under the stipulation and decree the wife, Joan Marie Nesset, was awarded custody of the parties' three children, and the husband, Lawrence Thomas Nesset, was required to pay $200 per month per child as child support, to be reduced by $200 per month as each child reaches age eighteen, dies, marries, or is emancipated. The stipulation and decree further state:

On or before each anniversary date of this Decree the parties shall file a Stipulation with the Clerk of this Court, Friend of the Court Division, providing for increased or decreased child support payments based upon the following: Child support payments shall be increased or decreased by the same percentage as the percentage change in the National Consumer Price Index as published by the United States Department of Labor for the most recent 12-month period for which data is available provided that the Husband's gross income for the like period has increased by at least the same percentage. If the Husband's gross income increased by a lesser percentage, then the payments to the Wife for child support shall increase by this lesser percentage. In the event the Husband claims the benefit of the above limitation, he shall submit copies of his federal tax returns or other sufficient proof of income to the Wife for the relevant years. If the parties are unable to stipulate to the current adjustment amounts, either may request that the Court determine the same either itself or by appointment of a Special Master; the cost of such proceedings shall be shared equally by the parties and any adjustment made shall relate retroactively if necessary to the appropriate anniversary date.

Both parties stipulate and agree that this provision for a percentage increase or decrease in support payments contemplates only percentage changes in the National Consumer Price Index and any increase (regardless of the amount thereof) in the gross income of the Husband. Accordingly, any such future increase in the Husband's gross income (regardless of the amount thereof) shall not be the subject of any future modification proceedings by the Wife to increase child support. This provision expressly does not contemplate any decrease in the gross income of the Husband or any increase or decrease in the gross income of the Wife, the occurrence of any of which may be the subject of future modification proceedings by either party concerning child support.

The wife was awarded the parties' home in Marion, Iowa, subject to a lien in the husband's favor in the sum of $26,875 payable when child support is no longer due or upon sale of the home or remarriage of the wife. At the time of the decree the wife had $8520 and the husband had $25,300 of gross annual income.

The husband subsequently filed a petition to modify the decree, and trial was held on his petition on December 29, 1982. At that time the wife had $14,000 and the husband had $29,100 of gross annual income. The trial court denied the petition to modify, and the husband appealed. In his appeal the husband advances a number of arguments for modification. The arguments are largely factual in nature, raising questions as to the equities of the terms of the stipulation and decree.

■ I. Preliminary to modification of a dissolution decree, a party must establish a material change of circumstances. *Leo v. Leo,* 213 N.W.2d 495 (Iowa 1973). In this case we prefer first to address the husband's specific requests for modification on their merits. If we find any of the requests meritorious we will be required to confront directly the question of a material change of circumstances.

■ II. The husband first contends that the COLA clause in the decree has proved to be too vague and contradictory to be enforceable, and that it should therefore be abandoned. He first has trouble with these two sentences in the decree:

Child support payments shall be increased or decreased by the same percentage as the percentage change in the national Consumer Price Index as published by the United States Department of Labor for the most recent 12-month period for which data is available provided that the Husband's gross income for the like period has increased by at least the same percentage.

If the Husband's gross income increased by a lesser percentage, then the pay-

ments to the Wife for child support shall increase by this lesser percentage.

The two sentences seem harmonious, but the husband argues that no provision is made for the case in which both the index and the husband's gross income decline. We do not think we should venture an opinion at this time on that hypothetical situation. In the present case the index and the husband's income both rose. We do not find merit in the husband's argument, under this factual record.

■ Further contending for elimination of the COLA clause, the husband argues several alleged infirmities as to the precise index which is to be used, the time period which is to be considered, the method by which the index is to be applied, and the principal amount of child support which is to be used as a factor.

We can best deal with this issue by illustration. The issue involves construction of the stipulation and dissolution decree. The decree was granted in the month of April. The Bureau of Statistics of the United States Department of Labor publishes a "CPI Detailed Report" for each month. The present parties are urban consumers, and on page 1 of the report the bureau lists the change in the consumer price index for all urban consumers (CPI–U) from the same month a year earlier. *See e.g. CPI Detailed Report* 1 (Feb. 1983) ("The February [1983] level of 293.2 ... was 3.5 percent higher than the index in February 1982."). *See also* Note, *Inflation-Proof Child Support Decree: Trajectory to a Polestar*, 66 Iowa L.Rev. 131 n. 6, 149 n. 143 (1980) (published before recent change in CPI format).

The stipulation and decree require the use of the CPI report "for the most recent 12-month period for which data is available provided that the Husband's gross income for the like period has increased by at least the same percentage." Each report is actually published two months after its particular month. As the anniversary month of the decree is April, the annual computation of a change in child support starting in April would be made in March, using the

report just published for January preceding. Assuming that the monthly child support for the year beginning April 1984 is $225 per child (due to previous operation of the COLA clause), that the CPI Detailed Report for January 1984 lists the CPI–U for that month as 3% higher than for January 1983, and that the husband's gross income for the twelve months ending January 31, 1984, is 2% higher than for the twelve months ending January 31, 1983, the child support per child would increase by 2% times $200 or $4 per month, for a total of $229.

We thus conclude that the problems visualized by the husband in applying the COLA clause are not insuperable. Application could be simplified by operating the COLA clause on a calendar year basis, assuming the husband's income taxes are calculated on a calendar year basis, and the parties could, of course, agree to do so. Otherwise the clause will operate on the twelve-month period we have used in the illustration. We modify the trial court's supplemental decree to the extent it varies with this division of the present opinion.

■ III. Further objecting to the COLA clause, the husband argues that the clause has proved to be inequitable in operation. He contends that use of his increases in *gross* income does not take progressive income taxation into consideration. This argument must have been apparent when the stipulation was made. Moreover, the husband's increases in gross income do not themselves trigger increases in child support. Increases in child support are founded on increases in the cost of living; increases in the husband's gross income act only as a lid. Present application of the COLA clause does not appear so inequitable with respect to the husband's income taxes as to warrant modification of the decree.

■ The husband also contends that two of his burdens regarding child support tend to "double up." He is required to leave $26,875 invested in the home without interest—he recognizes that by so doing he is

assisting with the provision of shelter for the children. He is also required to provide medical insurance for the children and to pay the first $1500 of their uninsured medical expenses. At the same time, the husband argues, shelter and medical expense make up two of the components of the consumer price index involved in the COLA clause.

The husband's doubling-up argument has superficial appeal, but that is all. Actually the husband is not twice paying for the children's shelter and medical care. Shelter and treatment are only *components* of the consumer price index, among a number of components. True, they may be higher than some other components, but trying to ascertain their separate effect upon the index would involve us in speculation. We doubt that the parties intended to fine-tune the COLA clause to that degree when they signed the stipulation. We do not find merit in the husband's doubling up argument.

IV. The husband points to the increases in the wife's income since the decree and her ability to hold down family expenses in several respects. He urges again that the COLA clause should be eliminated or his child support load should otherwise be lightened. The wife has in fact improved her earnings, and further improvements appear possible if not probable. In addition, she appears to be careful with money. But at the time of the hearing her earnings were only up to $14,000 a year. She has a family of four to provide for, herself and the three growing children; she can hardly be considered affluent. She works outside the home in the business world, and must have reliable transportation and present a respectable appearance. We are aware of the clause in the stipulation and decree, "This [COLA] provision expressly does not contemplate any decrease in the gross income of the Husband or any increase or decrease in the gross income of the Wife, the occurrence of any of which may be the subject of future modification proceedings by either party concerning child support." We do not think, however, that the wife's income has risen to such extent, considering her financial load, that modification of the husband's liability should be granted at this point. The trial court did not rule out any relief should the wife's income "rapidly and radically increase...."

Upon consideration of all the husband's arguments, including his additional contentions in his brief, we conclude that the COLA clause should remain intact and that its terms should not be altered at this time.

V. The husband also requests two other changes. Under a clause in the stipulation and decree, when child support ceases for the first two of the children the amount of child support is reduced by $200 per month on each occasion. At that time, however, the child support may be more than $200 per child by operation of the COLA clause. As we understand him, the husband requests that the total amount of child support for three children be reduced by one-third, rather than by $200, as each child ceases to be eligible for child support.

The requested procedure, however, would not take into account the higher fixed costs per child for two children in comparison with three children or for one child in comparison with two children. By operation of the reduction clause and the COLA clause, the wife will have more funds per child for child support as each of the first two children becomes ineligible for support. This clause, like the COLA clause, was bargained for in the stipulation, and we do not think it should be modified under the present evidence.

This part also of the decree appears to be subject to misinterpretation. We construe it in the following illustration. Assume that at a given time the total monthly support for the three children is $700 by virtue of the operation of the COLA clause. One of the children then becomes of age, and the total monthly child support drops to $500 prospectively. In January following the rate of inflation is plus 3% over the preceding January, and for the same year the husband's gross income increases 2%. Beginning in April following, the total

monthly child support would be $500 plus 2% times $400 or $508. When the last child ceases to be eligible for child support, the child support will of course drop to zero prospectively.

■ The other change the husband seeks relates to the sum of $26,875 he is leaving in the home, without interest. He contends that the decree should be changed to allow him, at the time of distribution, the greater of $26,875 or a proportion of the eventual sale price of the home equal to the ratio of $26,875 to the value of the home at time of decree.

A question exists whether this part of the decree, dealing with property settlement, is subject to modification at all. *In re Marriage of Knott*, 331 N.W.2d 135, 137 (Iowa 1983). Assuming arguendo that it is, the husband appears to desire to have the advantage both ways: if real estate prices go up he wants to share in the increased price of the home, but if they decline he wants his $26,875. We note also that the house may be sold sooner than the time the last child ceases to be eligible for child support; the wife may sell the house at an earlier time or remarry. Moreover, the wife has all the interim expenses with reference to the home, and the husband's leaving $26,875 in the home appears to be one of the results of the bargaining for a stipulation. On the present record such inequity does not appear as to justify modification on this item.

■ VI. On the other side of the case, the wife points out that attorney fees are not allowed in modification proceedings, *In re Marriage of Havener*, 240 N.W.2d 670, 671 (Iowa 1976), and she states that for the present proceedings she will have attorney fees of $2000 which will have to be taken out of her living expenses. She therefore asks an allowance of an additional $2000 from the husband for living expenses. The request is ingenious, but we do not find merit in it.

We uphold the supplemental decree as modified, and find no necessity to determine whether a material change of circumstances occurred. We assess the appeal costs to the husband.

MODIFIED AND AFFIRMED.