# IN THE COURT OF APPEALS OF IOWA

No. 22-2051
Filed February 7, 2024

IN RE THE MARRIAGE OF LINDSEY SUE ROUTT
AND FREDERICK MICHAEL ROUTT, JR.

Upon the Petition of
LINDSEY SUE ROUTT,
        Petitioner-Appellee,

And Concerning
FREDERICK MICHAEL ROUTT, JR.,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Davis County, Crystal S. Cronk,

Judge.


        A father appeals the denial of his motion to quash an income-withholding

order entered by the Child Support Recovery Unit. **AFFIRMED.**


        Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for

appellant.

        Carly M. Schomaker of Gaumer, Emanuel & Goldsmith, P.C., Ottumwa, for

appellee.


        Considered by Tabor, P.J., and Badding and Langholz, JJ.

**TABOR, Presiding Judge.**

"[T]here seems to be a complex history behind this obligation." That observation by an attorney for the Child Support Recovery Unit (CSRU) may have understated the twists and turns in the post-divorce litigation between Frederick "Ricky" Routt and Lindsey Routt. Ricky now contests the CSRU's order for income withholding of amounts he owed as current and back child support. But because Ricky's challenges to the district court's denial of his motion to quash that order are not properly raised or preserved for our review, we affirm without reaching the merits of his claims.

### I. Facts and Prior Proceedings

Ricky and Lindsey married in 2011 and have two children: A.R. born in 2012 and L.R. born in 2013. The family was living in New Mexico when Ricky and Lindsey divorced in 2014. The New Mexico decree ordered shared physical care and directed Ricky to pay $553 per month in child support. After Ricky moved to Ohio and Lindsey moved to Bloomfield, Iowa, Lindsey applied to modify the decree. When Ricky did not appear for the modification hearing, the Iowa district court entered a default order in August 2015 placing physical care with Lindsey. The Iowa order left Ricky's child-support obligation in place.

About two years later, Lindsey petitioned to have Ricky's parental rights terminated under Iowa Code chapter 600A (2017). Ricky did not appear for the hearing. In a June 2017 order, the Iowa juvenile court found that he had abandoned the children and approved the termination petition.

About one year later, in July 2018, Ricky was looking to buy real estate in Bloomfield. As part of that process, Lindsey signed a "release and satisfaction" in

which she stated that "[she] received all sums due to [her] including but not limited to, child support and court costs" under the August 2015 custody modification order. She also released "any and all liens with respect to child support which [she] may have against the property described as" residential real estate in Bloomfield. Ricky testified that his mortgage company filed that document, but it was never confirmed by the court.[1] That release and satisfaction was a prelude to the couple's temporary reconciliation. They lived together from September 2018 until January 2020, when Lindsey and the children moved out.

Two months later, Ricky moved to vacate the order terminating his parental rights. Lindsey did not resist. So, in June 2020, the juvenile court "vacated and set aside" its order terminating Ricky's parental rights.[2] That same month, Ricky petitioned to modify physical care of the children. After a June 2022 modification hearing, the district court decided the children, then ages eight and ten, would remain in Lindsey's physical care. Ricky appealed; we affirmed the modification order. *In re Marriage of Routt*, No. 22-1351, 2023 WL 5601800, at *3 (Iowa Ct. App. Aug. 30, 2023).

Meanwhile, the CSRU entered an order for income withholding against Ricky under Iowa Code section 252D.16A (2021). The CSRU records showed that Ricky owed $28,130.84 in back child support as of September 2021. It required

---

[1] In a brief Ricky filed without counsel before the motion-to-quash hearing, he asserted that the release allowed him to close on a house in Bloomfield in July 2018 where he then lived with Lindsey and the children.

[2] Our record includes only the order vacating the termination, not any motions or arguments explaining the grounds for restoring parental rights. The order stated that it was "not a contested proceeding and was not reported." Given this limited record and the issues presented here, we take no position on the propriety of the order vacating the termination of parental rights.

him to pay $553 in current support and $110.60 in back support each month. The CSRU also gave Ricky notice that he could contest the withholding order by moving to quash in the district court. He did so. Ricky's motion pointed to Lindsey's July 2018 release and satisfaction. And he asked to the court to quash the income-withholding order and to "set a hearing to determine the merits of any alleged back child support claimed to be owned by [Ricky] to [Lindsey]."[3]

CSRU attorney Robert Forrest responded to Ricky's motion to quash, admitting that Lindsey had filed a release and satisfaction "with the caveat that the satisfaction has never been approved by the court making it ineffective at this point." The response continued:

> That is said with the further caveat that [Ricky] has not made a payment since 2017 meaning income withholding would still be collected at 100% of the current support obligation plus an additional 20% to address arrears pursuant to administrative rules even if the satisfaction is approved.
> Support is not assigned to the State and there seems to be a complex history behind this obligation. If the payee is agreeable to income withholding being quashed for now, the State would suspend its resistance.

But the payee was not agreeable to that plan. Lindsey resisted the motion to quash. Her resistance asserted that Ricky needed to pay back child support for the time when his parental rights were terminated because he chose to petition the court to restore his rights. She argued that vacating the termination voided the original order. She insisted the child support that accrued while Ricky's rights were terminated should not be discharged and the income-withholding order should not

---

[3] The motion to quash asserted that the CSRU provided its withholding order to Iowa Work Force Development as Ricky was receiving unemployment benefits.

be quashed. Missing from her resistance was any discussion of the effect of her release and satisfaction on the child-support withholding.

Ricky responded to her resistance. He maintained that his child support obligation was terminated from June 2017 through June 2020. He also reemphasized the release and satisfaction signed by Lindsey. He reasoned that "collectively" the termination of his parental rights and Lindsey's signed release and satisfaction zeroed out all back child support that he owed before June 2020. He did not contest the accrual of child support from June 2020 to January 2022.

In April 2022, the court held a motion-to-quash hearing. In his testimony, Ricky objected to "backdating" his child support to 2017 when his parental rights were terminated. He also raised Lindsey's release and satisfaction and noted that she and the children lived with him from 2018 until 2020. An attorney for the CSRU appeared at the hearing but did not present any evidence or make any legal arguments to the court. In November 2022, the court issued a two-paragraph order denying the motion to quash. Ricky appeals that order.

## II.      Scope and Standards of Review

In general, we review equitable actions concerning support orders de novo. *In re Marriage of Griffin*, 525 N.W.2d 852, 853 (Iowa 1994). But when the appeal involves undisputed facts and statutory interpretation, we review for the correction of errors at law.[4]  *In re Marriage of Carr*, 591 N.W.2d 627, 628 (Iowa 1999).

---

[4] On appeal, Lindsey argues that "Iowa Code section 598.22A(1) requires the court to confirm the validity of a release prior to it being recorded as satisfaction of child support." But we do not address that statutory interpretation argument because Ricky does not offer any authority in support of his position.

### III.    Analysis

Ricky attacks the district court's ruling on two fronts.  First, he argues that the court erred by not recognizing and enforcing the release and satisfaction signed by Lindsey.  Second, he contends that the court should have reduced his child-support obligation for the sixteen months—from September 2018 until January 2020—when they cohabitated in Bloomfield.  Because neither issue is properly before us, we decline to disturb the district court's denial.

We start with a primer on error preservation.  Ricky's appellate counsel contends that both issues were preserved for review by filing a notice of appeal.  Missing an opportunity for careful appellate advocacy, Lindsey's counsel agrees that error was properly preserved by filing a notice of appeal.  But as we have repeated—more than sixty times since our published opinion of *State v. Lange*, 831 N.W.2d 844, 846–47 (Iowa Ct. App. 2013)—the filing of a notice of appeal does not preserve error for our review.  *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("However error is preserved, it is not preserved by filing a notice of appeal.  While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." (internal footnote omitted)).

Amendments to the appellate rules—effective April 1, 2024—codify this long-standing authority.  The revised rule states: "Filing a notice of appeal does not preserve an issue for appeal," and citing to the notice does not satisfy the requirement to include a statement in the appellant's brief "with references to the places in the record where the issue was raised and decided in the district court."

Iowa R. App. P. 6.903(2)(a)(8)(1). Although the revised rule is not yet in effect, Ricky's appellant's brief does not satisfy the existing standards.

*Release and Satisfaction.* On Ricky's first issue, even if we were to overlook his failure to assert on appeal how error was preserved, his appellant's brief features a more fundamental flaw. It cites no authority in support of his position. Because he offers no case, statute, or rule to back his arguments, we need not consider their merits. "[U]nder our rules and our precedents they have been waived in this appeal." *State v. Short*, 851 N.W.2d 474, 479 (Iowa 2014) (citing Iowa R. App. P. 6.903(2)(g)(3)).

*Cohabitation.* As his second issue, Ricky argues: "The doctrine of promissory estoppel should be applied to preclude Lindsey from denying satisfaction of all child support payments through January 2020." But as noted, Ricky does not point to a place in the record where error was preserved on this argument. And we find none. Even considering our de novo review of equity matters, "it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, *provided* [*the*] *issue has been raised and error, if any, preserved in the trial proceedings.*" *See In re Marriage of Full*, 255 N.W.2d 153, 156 (Iowa 1977) (emphasis added). Ricky's promissory estoppel argument was not preserved for our review because it was not raised or ruled on by the district court. *See In re Marriage of Hoffmeyer*, No. 19-1427, 2020 WL 1887954, at *2 (Iowa Ct. App. Apr. 15, 2020) ("Because Carl's due process argument was not raised or ruled on by the district court, it was not preserved for our review.").

So we affirm the district court's denial of Ricky's motion to quash the income withholding order.

**AFFIRMED.**